Good morning ladies and gentlemen. Our first case of the morning is Senegal against JPMorgan Chase Bank. Mr. Hall. Thank you. Good morning and may it please the court and counsel. My name is Benjamin Hall and I represent eight courageous class members who were brave enough to try to object to the class certification and the settlement proposal at the trial level. They're risking their careers and their own personal funds to push forward on this appeal. Having said that, we either win or lose on three discrete legal points. Number one, was the trial court required to comply with this court's instructions and mandatory instructions that the court conduct critical analysis and heightened scrutiny in a settlement class? And did he comply? And the third is, did the court comply? Unfortunately, in that list of three, did the court comply? You've left out the antecedent issue in this appeal, which is whether your clients are entitled to comply. In fact, that's where we need to begin. We will. But the third is whether or not there are, whether the court complied with the attorney's fee requirements with regard to notice of the motion for attorney's fees. So let me hasten to answer the question that Justice Easterbrook has raised. We are judges. I'm sorry, Judge Easterbrook. Judge, the honorable trial court specifically said there is only one class that he certified. The defendant's issues to try to ask you to reinterpret the honorable trial judge's express order. And if the court were to look at Appendix 003. I'm not really interested for this purpose in what the district court said. I'm interested in whether your clients are complaining about an injury. There are, the injury might have to do with damages. But since your clients have opted out of the damages portion of the class, they can't complain about that. Well, the issue might have to do with the injunctive relief. And so my question is, are you complaining about the injunctive relief? I'm complaining about both, your honor, because the trial judge specifically precluded my client from objecting both. What, what is your complaint about the injunctive relief? I looked in your brief to try to find an objection to the injunctive relief. The allocation, the allocation of $4.5 million in a class 2, B2 class. That is only a class for injunctive or declaratory relief. $4.5 million is a monetary award. Yes, I know. You've opted out of the monetary aspects. We, we excluded ourselves, your honor, because that was the only unlawful option the trial judge provided. Let me, let me talk about the unlawful. I'm trying to figure out whether you are objecting to the injunctive portions of the relief. We are. Which you now describe as money. Is there any part of the injunctive part of the relief, other than dollars, that you're objecting to? Well, our clients, eight of them, no longer, I'm sorry, seven of them, no longer work at the bank. And therefore, that kind of relief, the $4.5 million of the class settlement, goes to no, gives them no advantage. It's only those that work, and we have one client that still works there. That money now has left, and should never have been, in a B2 class. Judge, the honorable trial judge, however, allocated that money, monetary amounts, and a B2 class does not accommodate that. But this case falls off of the track, your honor, when we parse this unified settlement, the way that the defendants choose to argue it. Judge, the honorable trial judge, specifically, specifically certified a unified settlement. That unified settlement had a monetary component under B3, and it should have only had a declaratory component under B2. But when the judge gave a false choice, and that is, if you object to B3, you cannot be heard on any further objections. That is against the law, that is not compliant with Rule 26E. But it's not anything you can contest, unless you are injured by it. That's the problem. I'm trying to figure out how your clients were injured by this. We're injured, your honor, because our clients, eight of them, estimate their damages to have been $7 million, north of $7 million. They were included. I understand that, but your clients opted out of the monetary settlement. Only because... If the 4.5 million had moved from B2 to B3, you still opted out the B3 part of the class. But judge, we should have had the opportunity under the rules, 26E says that we, as class members... Oh, yes, you had the opportunity. The opportunity was to remain a member of the B3 class, and then appeal. That's the wrong framing of the issue. Let me suggest why. Let me... Look, it is very easy, if you think the district judge has made a plain error, to get the error corrected on appeal and then opt out. But the sequence, opt out first, appeal later, is very difficult in light of precedent in the Seventh Circuit. Your honor, but it is in compliance with Rule 26... No, 23. Rule 23 specifically says, all class members may object. All. However, the trial judge specifically said, my clients could not. We are class members, and this false choice to believe that there is a B2 class versus a B1 class, that's not what the trial judge said. The trial judge says, I'm certifying one class under both B2 and B3. If that is the case, then the moment our client said, we object to this B3 allocation of money, under 23E, we have the right to object and make a record at the fairness hearing. We were not allowed to make that record. And as a result, this court says, where is that information? We were precluded from doing exactly what Rule 23E1 contemplates. Now, judge, the issue is this. You asked the question, how have we been harmed? We were harmed because we would have had the right to show up at the fairness hearing and put on evidence specifically, showing how this monetary component was not consistent with the damages in the case. I must say, I still don't see how you are aggrieved by that. If that 4.5 million were moved from the B2 portion of the remedy to the B3 portion, your clients would not get a penny of it because they've opted out of the B3 portion. But Ronald, that puts the horse in front of the cart. No, it puts the sequence of what's actually happened in the world first. Your clients had a choice whether to opt out of the B3 relief or not. They chose to opt out. As I said, the sequence, opt out and then appeal, is not one that works under brand name prescription drugs. Well, that's not... If you think the district judge made a mistake, you stay in, complain, and appeal. We did stay in. We are class members. We are class members and there is no configuration of the facts that make us not be class members. The only opt out was as to that monetary component because our clients didn't have any information about the sufficiency. And if you're right about the 4.5 million, your clients are getting overpaid because that's in the B2 portion where they're in. We get no money. Rather than the B3 portion where they're out. No. In fact, the record, Your Honor, only shows that the $4.5 million goes for administrative costs and costs back to Chase. We get nothing. Class members get nothing in the B2 class. I'm sorry, in the B2 certified portion of this class. So the court has to decide one issue, at least in terms of our argument. Was there one class or two classes? If there is one class, then Rule 23 requires us to have an opportunity to object and be heard, even if we had excluded ourselves from the monetary portion. How does the trial court comply with the law if the trial court won't allow us to do what we have a right to do under 23E? Because... I just don't see that you have any right to opt out of the B3 portion... Because... And then get appellate relief that concerns only the portion of the class from which you have opted out. Your Honor, the reason we have that relief is because we could have made a record where the court would see the harm to our clients, the financial harm to our clients. This eviscerates the ability to make a record which Rule 23E was intended to do. It just means you have to stay in if you want to complain. That's all. Well, it would seem to me... It means you can't opt out and then complain about the very thing from which you've opted out. Well... That's the problem. Judge, the notice violates Rule 23E1A because there it says the parties have to provide the court with sufficient information... Is it? That would be interesting if you were saying in your brief, we claim a right to undo our opt outs and be back in. There is a rule that permits the trial court to reopen after the fairness hearing, but because we couldn't object, we could never avail ourselves to say, Judge, reopen the class. It seems to me... I've tried to read your brief with some care. Are you arguing... Have I missed an argument that what you want is a right to undo the opt out and be back in as members of the B2 class? What I want is fidelity to the law. All right. And fidelity to the law is... I wish you'd answer my question. I will answer your question, Judge. But I take it your answer is no. No, what is your question? I'm sorry, Judge, I want to answer... I want to answer your specific question. Listen first. I will. I looked in your brief, I hope with care, to see whether you were arguing that you're entitled to rescind your opt outs and be back in as members of the B2 class. Did you make that argument in your brief? I did not make that argument in the brief. Okay. I made the argument that we were denied procedurally the right to put forth our evidence as to why the B2 class... The B3 class was insufficiently funded. That's our argument. And before you now, in a class action where you have cooperation between class counsel and the defendant, no one can make a record for this court to review because we were denied the ability at the fairness hearing to object. If that is the precedent that this court sets, then collusive class actions can continue and you will not have objectors making a record. Do you want to reserve my time for rebuttal? Certainly, counsel. Mr. Toll. May it please the court. I'll be covering the issues of standing and waiver, your honors. Appellants opted out of the settlements monetary relief class and they had every right to do that. Now that they've done that, they have every right to pursue their claims for monetary relief individually. But as opt outs, they have no right and no standing to appeal the district court's approval of a monetary settlement from which they've excluded themselves. And in addition, their objections have been waived and so are not properly before the court for that reason also. Standing, of course, is a constitutional and a jurisdictional prerequisite. In order to have standing, appellants have to suffer some injury, in fact. And so in the context of an appeal, that requirement demands that appellants must demonstrate they suffered some adverse effect from the district court's judgment. As a result, those who opt out of a class cannot appeal the district court's order approving the class settlement that's been recognized repeatedly. And that makes perfect sense because when litigants opt out of a settlement, they're not bound by it. And so they can't be injured by the court's approval of it. For similar reasons, your honors, even class members who are bound by a settlement can only appeal those aspects of the settlement that affect them. And this court has observed that repeatedly, including in Martin vs. Reed, and Silverman vs. Motorola Solutions. So here, appellants opted out of the monetary relief class certified under 23B3. And as a result, they lack standing, and this appeal should be dismissed. On the issue of waiver, your honor, even if the absence of standing could be set aside, and of course it can't, appellants are not entitled to appeal here because they fail to object below, and thus waive their arguments. The Supreme Court's decision in Devlin made clear that the power to appeal is limited to those non-named class members who've objected during the fairness hearing. There's no dispute here that appellants did not object during the fairness hearing, and so they lack the power to appeal. And not only did appellants fail to object... Of course, the district judge told them they couldn't object. Since they'd opted out, the judge said, your mouths are sealed. Not quite, your honor. It's awfully hard then to say they didn't object. Well, your honor, what they expressly told the district court was they were not able to object. The district court explicitly asked Mr. Guerrier if he had anything to add to what was already stated in his briefs, and he responded in this way. He said, I do, your honor, and I hope I can kind of clarify what seems to be a misunderstanding. We're not asking for the opt outs to be able to object to the class settlement. Obviously, the class notice said you had to be a class member who did not opt out in order to object, and so we're not asking for the opt outs to have the right to object. But they were class members. They still are class members. They're members of the B2 class from which they can't opt out. Exactly right. That's why I was asking, are you complaining about the B2 relief? Because they're members of that class. Exactly. They can't opt out of it, which is also why they have as much standing as they can use. The only question is whether they're entitled to appeal the issue they're trying to appeal. I think that's exactly right, your honor. They're members of the B2 class. If they had some objection related to the injunctive relief, they were free to raise that. They didn't. No, the district judge said they weren't. District judge said, you have opted out. I'm not hearing you. Well, I think he was... Now, it may be that they don't have any objections to the B2 relief. That's what I was pursuing. But the district judge certainly said, if you opt out of the monetary relief, that's it as far as I'm concerned. And that's a pretty clear error. Well, I think he was directing the comment to the objections that they had raised. There was a letter that they had submitted on behalf of an anonymous class member who they said was not opting out. That person was never identified. Each of those grievances went to the monetary relief component, went to the B3 class. Well, that's where I was going. But that's unrelated to something like standing. They are members of the class. They're entitled to object to the portions of the relief that injure them or aren't favorable to them. The problem, as I see it, is that they're not doing that. I think that's exactly right. So I think we would search the record in vain in the district court and in the appellate briefs for any objection they even claimed they wanted to raise before the district court regarding the injunctive relief. Every issue they raise has to do with the monetary component. And I think Mr. Hall confirmed that in his address before this court. But this waiver, that's what you started talking about. They did waive it, didn't they not? I believe they did waive it, Your Honor, because I believe Judge Shaw gave them the opportunity to raise any points, any objections. And even if they thought the was wrong, I think they had an obligation to raise that issue before the district court. And I don't think they can come before this court and complain about issues that weren't addressed to the district court in the first instance when they had the opportunity. The language you said, we're not asking for the opt outs to be able to object to this class settlement. That's right. And counsel actually took the position that the idea, the very idea that they wanted to opt out and object was a misunderstanding on our part. So I think that's a clear waiver in addition to what I think is a very clear case of lack of standing because they're not complaining about any issue that actually affects them. Thank you, Your Honors. Thank you, Mr. Toll. Ms. Friedman. May it please the court, Linda Friedman, for the class representatives in the class. Your Honor is correct. There were no objections below to the programmatic relief and none articulated in the briefs that were submitted with this court. Instead below, the opt outs took a different course, which was to request from the court that the court allow for a subclass to be advised that there were only 11 opt outs. Mr. Gurrier responded below and we already represent eight of them. And that was the end of the discussion about the opt outs role and continuing role in the litigation. So instead of appearing before the court and making an effort to challenge the provisions that they felt were not fair if they were not allowed to object, they chose to try to become a subclass so that their before the same judge and conceivably avoid their arbitration agreements. This is not a class action that is suitable for these class members, which is why they opted out of it. You heard counsel today advise that the damages for these class members exceed $8 million. This is a fund of $19.5 million for 247 people who are sophisticated financial advisors who reviewed the terms of the settlement agreement and determined that it was in their best interest to participate. That's 94% plus and really only eight people and an additional three people who opted out. There's a reason why Rule 23b3 classes allow for opt outs and that's precisely where the parties believed that they would do a better job litigating their claims on their own. These class members made that class become a subclass so that they could stay in federal court and litigate their claims with the hope of recovering $7 million. If their claims are catastrophic claims, they belong outside of the claim. If they feel that they are valued properly at $7 million, we wish them luck in accomplishing that goal. But there was nothing wrong about this class action. And I also wanna defend the district court judge in the way that the case was handled. There's one factor that has not been discussed and that is what was the posture of the case when it came before the district court? The posture of the case is that there very likely would not have been a class action lawsuit because the law had shifted so that the epic decision had been issued. So the district court was faced with teams of attorneys who had done an effective job in efficiently navigating a risk that was present for both sides. The case was overseen by a former federal court judge who mediated it and class representatives who submitted declarations which extensively detailed their participation in this lawsuit. They were financial advisors, many had graduate degrees, they participated in reviewing the evidence, and they were present for the proceedings. So we believe Your Honor is correct that having made a decision to opt out of the class action, the proper course is to allow the people who wanna participate in the class action to receive the benefit of the deal that they chose to accept. Can you speak to the exchange of the damages model, either the raw data or the methodology? How much do you believe should have been and what's the counter argument to that? There's a... In some cases, it may have be helpful for a judge to know what the range of damages would be. That might be, for example, a Fair Labor Standards Act claim where the both sides agree those are the damages. Then the court could look at that number and the court could determine what percentage had been compromised in that claim. The court could also, in that kind of a case, presuming that the checks were being distributed to each person on a formulaic basis and none was being reverted, would actually know what the compromise was. In this case, that couldn't be further from what occurred. The debate at the mediation and the debate in these racial discrimination cases is often, is there a wage disparity? And if so, what percentage of the wage disparity should be attributed to the practices that are challenged or to racial discrimination? So in this case, the judge, in order to be able to comprehend what was at stake in the case and what was being traded for the settlement, would have needed to have a hearing, look at competing experts, hear the people arguing, presumably against their own interests, that their defense damages were higher than they thought they were, and there were benchmarks and other ways to get information that the court felt comfortable satisfied this inquiry. The court looked to cases that were presented by the opt outs themselves as benchmarks and as what the market had set for the rate for these kinds of cases involving financial advisors. The opt outs pointed to two cases, McReynolds versus Merrill Lynch and Slaughter versus Wells Fargo. Slaughter versus Wells Fargo was $35.5 million for 500 people, so it was very comparable to this case. And McReynolds was $160 million for 1,400 people. However, it spanned 12 years of a class period and multiple appeals and I think eight years of litigation. Significantly, both of those cases were litigated by my law firm. And the court felt that our ability to judge how the case that we had just settled in Wells Fargo and McReynolds with Merrill Lynch had compared to this case against Chase. In addition, there were other indicators in the record with respect to the value of these claims, which were a number of cases that some fell in the category of copycat cases. Other cases were cases that had been prosecuted and all of them were considerably below McReynolds, considerably below the Slaughter case, and considerably below this one. The court also knew that this class action, the money that had been recovered, was the highest class action by a multiple of two in the prior year in 2016. And also, the data that ultimately came out showed that, again, it was at the top in terms of resolutions for racial discrimination class actions. The court also had its own experience to understand how often summary judgment is granted in these cases, how infrequent it is that there's a class certification, and didn't have any concerns about collusion. And so when a judge looks at a class settlement, what the new amendments to Rule 23 explain and the guidelines that have been issued or propounded by the people who participate in that process, is that the court should look at the settlement and first ask the question, are there concerns about collusion? Are there red flags to the court to delve deeper? This was not a reverse auction case. This was not a case where there were coupons that were given. There was real money given on a per capita basis of about $78,000 per class member. That's 100% turnout, which the class would have been estimated probably to have a turnout closer to 60% or 70%. And also, in terms of the way the structure was set up, the court also noted and appreciated that many times in these cases, the damages are individualized, and therefore, it made sense to do a process that would allow people to have a right to appear in front of a neutral, a right to present their own claims and their own valuations on damages. And the court appreciated the thought that went into that, which also negated the idea that maybe the lawyers just wanted a quick fee because the lawyers had committed after the fee had been paid to continue to work on the case for a year and to prosecute all the claims that came through on behalf of the class members. If there are no further questions, thank you, Your Honor. Thank you, Ms. Friedman. Thank you. Anything further, Mr. Hall? Thank you, Your Honor. Yes. Let me address the issue of waiver that was raised at the fairness hearing. Mr. Gourier appeared at the fairness hearing just to see if evidence would be presented on the claims that he had sustained. However, at the fairness hearing, not one piece of economic information was conveyed to the court. Number two, at the fairness hearing, the judge himself did not request or obtain any of the economic data that supposedly supports this class settlement. Quite honestly, at the fairness hearing, the judge precluded and excluded class members from having any opportunity to even see it, and not only the class members, but the judge himself said that the information would not be provided to the court. So what you have is a class settlement of monetary value with nothing in the record to support it. When our clients chose to say, we are not gonna participate in this monetary portion, no financial information was provided to the class. No financial information was provided to the court. None. Let me get then to Judge Easterbrook's question. Judge Easterbrook, I was looking at Rule 23, and the rule does not give the trial court the option to say, you can opt out of a B2 class or a B3 class. The only thing the rule allows is that you can opt out of the class period. The trial court did not give that option to our clients. And as a result, this court has to test whether or not the notice that was sent out complied with Rule 23, and it did not. 23E says the notice shall include, or must include, that you have the right to be excluded from the class, not a component of a settlement. Let me finally say, the $19.5 million, under the rules, class counsel was supposed to allow the class to know. Thank you, counsel. Thank you, Mr. Hall. Thank you. The case will be taken under advisement.